THE STATE OF NEVADA, RESPONDENT, *v.* GEORGE ECONOMY, APPELLANT.

No. 3374

October 20, 1942.　　　　　　　　　130 P. (2d) 264.

*George F. Wright,* of Elko, for Appellant.

*Gray Mashburn,* Attorney-General, *W. T. Mathews* and *Alan Bible,* Deputy Attorneys-General, and *C. B. Tapscott,* District Attorney, of Elko, for Respondent.

## OPINION

By the Court, DUCKER, C. J.:

Defendant was convicted in the district court of peddling a narcotic drug known as marihuana, in violation of section 5 of the narcotic act of 1923, as amended by the act of 1935, chap. 33, Session Laws 1923, pages 39, 40, 41; chap. 73, Session Laws 1935, pages 160, 161. Section 1 of the former act, as amended by the act of 1931, chap. 43, Session Laws 1931, pages 51, 52 reads:

"Each and all of the following are hereby declared to be narcotic drugs: Cannabis indica, cocaine, opium, yen shee, morphine, codeine, heroin, marihuana, anhalonium (peyote or mescal button), or any of the salts, derivatives or compounds of the foregoing substances, or any preparation or compound containing any of the foregoing substances, or their salts, derivatives, or compounds."

Section 3 provides: "Where any person is convicted

of a violation of the provisions of section 2 of this act and upon trial or upon a plea of guilty a prior conviction shall be proved against him, he shall be deemed guilty of a felony and be punished accordingly. The words 'prior conviction' shall be construed as meaning a previous conviction at any time in any court in this or any other state for a violation of either the provisions of this act or of any statute or ordinance dealing with or regulating the use, supply or possession of any or all narcotic drugs."

Section 5, as amended, provides in part: "A peddler of any of the narcotic drugs enumerated in section 1 of this act is hereby defined as a person selling, furnishing, or giving away, or growing, or having in his possession for the purpose of sale, furnishing, or gift of any of said narcotic drugs in quantities not exceeding one ounce. * * * Any person who shall be convicted of being a peddler as herein defined shall be punished by imprisonment in the state prison for a period of not less than five years * * *."

Defendant contends that the above act has been repealed by chapter 23, Session Laws 1937, page 35, et seq., or by chapter 79, Session Laws 1941, pages 115, 116, 117. The 1937 act contains no specific repealing clause. In general terms section 25 of the act provides: "Repeal. All acts or parts of acts which are inconsistent with the provisions of this act are hereby repealed."

 Is the 1923 act repealed by implication of the 1937 act? Repeals by implication are not favored and will not be indulged if there is any other reasonable construction, yet where a statute covers the whole subject matter of an earlier act and it is evident that it was intended as a substitute for it, a repeal is effected though the repealing act contains no express words to that effect. 59 C. J. 921; United States v. Tynen, 78 U. S. 88, 11 Wall. 88, 20 L. Ed. 153; United States v. Claflin, 97 U. S. 546, 24 L. Ed. 1082; Henrietta Min.,

etc., Co. v. Gardner, 173 U. S. 123, 19 S. Ct. 327, 43 L. Ed. 637; Pratt Institute v. City of New York, 183 N. Y. 151, 75 N. E. 1119, 5 Ann. Cas. 198; Thorpe v. Schooling, 7 Nev. 15; State v. Lee, 28 Nev. 380, 82 P. 229; Gill v. Goldfield Consol. Mines Co., 43 Nev. 1, 176 P. 784, 184 P. 309; Carson City v. Board of County Commissioners, 47 Nev. 415, 224 P. 615. In Thorpe v. Schooling, supra, the court said:

"True, repeals by implication are not favored; and if it be not perfectly manifest, either by irreconcilable repugnancy, or by some other means equally indicating the legislative intention to abrogate a former law, both must be maintained. The intention, if perfectly clear, however, must control, however it may be expressed or manifested. It is upon this principle, evidently, that it is held that a statute revising the whole subject matter of a former law repeals it. * * *

" 'A subsequent statute,' said [the court in quoting from] Dewey, J. [in Bartlet v. King, 12 Mass. 537, 7 Am. Dec. 99], 'revising the whole subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense, operate to repeal the former.' "

We will not unduly lengthen this opinion by setting out the two acts in full. While the later act does not purport to be a revision of the earlier act, it is in effect a revision. It is a complete system for regulating the possession, use, sale, distribution, or administration of narcotic drugs. This is reflected in the title, which is as follows: "Chap. 23—An Act defining and relating to narcotic drugs, prohibiting the use, sale, distribution, or administration thereof, except under the lawful direction of duly licensed practicing physicians, dentists, veterinarians, manufacturers, apothecaries and others, prohibiting the unlawful possession, use, sale, distribution or administration thereof, and to make uniform the law with reference thereto, prescribing penalties for

the violation hereof, and other matters properly relating thereto, and repealing all acts and parts of acts in conflict herewith."

The body of the act covers the whole subject of the 1923 act as amended, and contains new provisions. It is provided in the 1937 act that it may be cited as the "Uniform Narcotic Drug Act."

Respondent contends that the purpose of the earlier act is solely to prohibit the sale, supply, use and possession of narcotic drugs by persons wholly unauthorized to handle the same in any manner, while that of the later acts pertains only to persons who are in some manner authorized by law to do so.

A comparison of the respective acts does not bear out this contention. We think both acts deal with both classes of persons. Concededly by this prosecution and as will be seen by reference to section 5 of the 1923 act, it deals with unauthorized persons, and section 6 of the act relates to persons authorized to deal in drugs, such as jobbers, wholesalers, manufacturers, physicians, veterinarians, and dentists. Violation of this act is made a misdemeanor. Unauthorized persons are dealt with in paragraph 1 of section 1 of the uniform narcotic drug act, and in sections 2, 11, 13, 14, 17, 20, and 21. Paragraph 1 provides: " 'Person' includes any corporation, association, copartnership, or one or more individuals."

As distinguished from these are defined in paragraphs 2 to 9, inclusive, those who afterwards in the act under some circumstances are authorized to deal in narcotic drugs. Section 2 of the act includes all of the aforesaid. It provides: "It shall be unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, or compound any narcotic drug, except as authorized in this act."

Respondent particularly stresses section 15 of the uniform narcotic drug act as indicating a purpose of the act to be applicable only to persons authorized to deal in narcotic drugs. The section reads: "On the

conviction of any person of the violation of any provisions of this act, a copy of the judgment and sentence, and of the opinion of the court or magistrate, *if any* opinion be filed, shall be sent by the clerk of the court, or by the magistrate, to the board or officer, *if any,* by whom the convicted defendant has been licensed or registered to practice his profession or to carry on his business. On the conviction of any such person the court may, in its discretion, suspend or revoke the license or registration of the convicted defendant to practice his profession or to carry on his business. On the application of any person whose license or registration has been suspended or revoked, and upon proper showing and for good cause, said board or officer may reinstate such license or registration."

The italics are ours and we think the words, "if any" so italicized, save the section from the construction respondent claims. Section 20 of the uniform narcotic drug act provides in the following language a common punishment for all violators of the act, viz: "Any person violating any provision of this act shall be deemed guilty of a felony, and upon conviction thereof shall be punished, for the first offense, by imprisonment in the state prison of the State of Nevada for not less than two years nor more than ten years; and for any subsequent offense, a prior conviction having been had at any time in any court in this or any other state or federal court, for a violation of either the provisions of this act or of any statute or ordinance dealing with or regulating the use, supply or possession of any or all narcotic drugs, shall, upon conviction, be punished by imprisonment in the state prison of the State of Nevada for not less than ten years."

Comparing this section with section 3 of the 1923 act it will be observed that part of the language in both as to a prior conviction, is identical. This in itself is some indication of an intent to substitute. It will be further observed that the penalties of the two acts are such that they present clear repugnancies. The first act

makes the punishment for mere possession of any narcotic drug a gross misdemeanor. The later act makes it a felony and punishable for the first offense by imprisonment in the state prison for not less than two years nor more than ten years. The act provides that one who shall be convicted of selling any narcotic drug in quantities not exceeding one ounce shall be punished by imprisonment in the state prison for a period of not less than five years. In other words he could be imprisoned from five years to life. If he was convicted for selling in quantities greater than one ounce he could be imprisoned from ten years to life. In the later act in either of these instances he could be imprisoned only for not less than two years nor more than ten. For mere possession therefore, the first act permits in the matter of punishment what the later act prohibits, and for selling the later act permits what the earlier act prohibits. The earlier act makes no provision whatever for additional punishment for a second offender, except in a case of mere possession, for which a penalty of not less than one year or more than ten in the state prison, or by a fine of not less than five hundred dollars or more than one thousand dollars, or both, whereas the later act provides for an additional penalty for a prior conviction for possession or selling and in all cases of violation of the act "or any statute or ordinance dealing with or regulating the use, supply or possession of any or all narcotic drugs" of not less than ten years. It will be seen therefore that the later act prohibits what the earlier act permits in cases of conviction of possession by a prior offender, namely, a five hundred dollar fine. On the other hand, the later act supplies what the earlier act omits—additional punishment for all second offenders dealing in narcotic drugs. The later act also prohibits what section 6 of the earlier act permits; that is, punishment as for a misdemeanor for violation of any of its provisions. Pursuant to its purpose of uniformity the uniform narcotic drug act regards all first offenders against its provisions of

equal turpitude and all second offenders as of equal and deeper turpitude.

■ In United States v. Tynen, supra, the court, in construing the earlier and later act of Congress where similar repugnancies in penalties were involved, held: "When there are two acts of Congress on the same subject, and the latter act embraces all the provisions of the first, and also new provisions, and imposes different or additional penalties, the latter act operates, without any repealing clause, as a repeal of the first."

The instant case seems to fall within the principle above enunciated.

There is nothing in the uniform narcotic drug act to indicate that it was intended to be cumulative or auxiliary legislation to the 1923 act. Its general purpose as expressed in section 23, is, "to make uniform the law of those states which enact it." This general purpose would be frustrated by a construction which would leave conflicting legislation unrepealed. The defendant could have been prosecuted under its provisions for the offense of selling a narcotic drug and on conviction his punishment fixed at two to ten years. When we consider this with the general purpose of the act as expressed in section 23 and its comprehensive scope as to narcotic drug offenders, it seems unreasonable to believe that it was intended to give a district attorney power to prosecute for the same offense under the 1923 act when a conviction would draw a term of punishment for not less than five years, and which might extend to life. Punishment which can be extended to imprisonment for life is reserved by the uniform narcotic drug act for second offenders only.

It is argued by respondent that as the uniform narcotic drug act abolished the distinction in severity of punishment between a peddler and a wholesaler prescribed in the 1923 act, it would, on that account, be unreasonable to believe that a repeal was intended; that the legislature ought not to be suspected as wishing to

impose as light a punishment on one who sold three hundred pounds of the drugs as on one who sold one ounce. The argument does not impress us. It loses sight of the idea that the legislature was striving for uniformity in the criminal law in regard to narcotic drug matters. Moreover, if the legislature felt that it was equitable to prescribe the same punishment for one who sold one ounce as for one who sold two ounces or one hundred ounces, this would be a matter of policy which is exclusively a legislative province. As a further indication that the legislature did not intend to repeal the 1923 act it is pointed out by respondent that in 1935 it was amended (chapter 73, Stats. of Nevada 1935, p. 160) two years subsequent to the passage of the original uniform act in 1933, chapter 51, Stats. of Nev. 1933, p. 46. It is also pointed out that this court in Ex Parte Medeiros, 57 Nev. 301, 64 P. (2d) 346, 347, decided in 1937, used this language:

"The information, which is set out in the sheriff's return to the writ, charges the petitioner with a felony, in that at a certain time, and place he did 'wilfully, unlawfully and feloniously have in his possession narcotic drugs. * * *' He is not charged as a second offender and thus brought within that provision of the act of 1923."

As to the first point, the uniform law of 1933 was declared unconstitutional in Ex Parte Medeiros, supra, on account of a defective title and, as stated in that case, the legislature of 1935, deeming the title defective, sought to validate it by amendment. Chap. 179, Statutes of Nevada 1935, p. 384.

It is fair to assume that it may have entertained some doubt of its action and that its amendment of the 1923 act in 1935 is therefore of little or no significance. As to the second point, the 1923 act was not being scrutinized in Ex Parte Medeiros, or compared with the 1933 act. Its validity was not involved. The court's recognition of it was merely incidental and could not

render it immune from the effect of legislation not then enacted.

■ We conclude that said act of 1923, as amended, has been repealed by the uniform narcotic drug act of 1937. Respondent contends that the amended information is broad enough to sustain a conviction under the latter act. This contention, we think, is well founded. The amended information charges: "That the said defendant George Economy, on the 25th day of June, 1941, or thereabouts, and before the filing of this information, at Elko, the County of Elko, State of Nevada, did then and there wilfully, unlawfully and feloniously sell narcotic drugs, to-wit, marihuana, in a quantity in excess of one ounce, to William R. Anderson." The uniform narcotic drug act does not name "marihuana" as a narcotic drug, but in section one it denominates "cannabis" as a narcotic drug and defines it as including "the following substances under whatever names they may be designated: (a) the dried flowering or fruiting tops of the pistillate plant Cannabis sativa L., from which the resin has not been extracted, (b) the resin extracted from such tops, and (c) every compound, manufacture, salt, derivative, mixture, or preparation of such resin, or of such tops from which the resin has not been extracted." Under all authorities this definition embraces marihuana, which is a product of cannabis. Consequently defendant's demurrer interposed to the amended information on the ground that it did not state a public offense, was properly overruled.

There was substantial evidence introduced by the state to prove that at the time and place alleged in the amended information defendant sold a quantity of the drug interdicted by the uniform narcotic drug act, to the person named herein.

■ Refusal of the court to grant defendant's request that the jury be permitted to view the scene of the alleged crime is assigned as error. The contention that the court abused its discretion in this respect is

predicated upon the claim that such a view would have enabled the jury to better weigh the testimony of two of the state's witnesses as to the sale of the drug by defendant in the street near his residence, to the advantage of defendant. A consideration of the testimony convinces us that a view by the jury would not have materially aided it in that respect. At any rate the court acted well within its discretion in refusing the request.

■ The contention that the court erred in refusing to grant a continuance at defendant's request so that one Mrs. Silas Jones could be produced as a witness in his behalf, is equally without merit. The court also properly exercised its discretion in refusing a continuance so as to enable defendant's counsel to obtain photographs of the alleged scene of the crime. Photographs of the scene had already been placed in evidence by the state and proved to accurately show the scene. Moreover, said counsel had had many months prior to the trial to have photographs of the place taken.

■ The action of the court in refusing defendant's instruction No. 4 defining "abiding conviction" in connection with reasonable doubt, was not error. It was refused on the ground that it was covered in an instruction given by the court. The court gave the statutory instruction on reasonable doubt which contains the words "abiding conviction," sec. 10963 N. C. L. To have elaborated on this by a definition of "abiding conviction" would have been in effect contrary to the admonition in sec. 10964 N. C. L. that "no other definition of reasonable doubt shall be given by the court to juries in criminal actions in this state." Besides, any person of ordinary education and intelligence should know what is meant by "abiding conviction."

■ Refusal of the court to give defendant's offered instruction No. 5, which reads: "Gentlemen of the jury, the court instructs you that the failure of the prosecution to call a witness to prove a fact material to his case

raises an inference unfavorable to the state, where the witness is available and the evidence within the reach of the prosecution. And in this connection you are further instructed that the failure of the prosecuting attorney to examine a witness, cognizant of the material facts, and presumably available at the trial, permits an inference of fact favorable to the accused," is assigned as error.

The decisions of this court have resolved this point against defendant's contention. See State v. Milosovich, 42 Nev. 263, 175 P. 139; State v. Smithson, 54 Nev. 417, 19 P. (2d) 631, 22 P. (2d) 129. There was no evidence to make applicable the following instruction offered by defendant and refused by the court: "When from the evidence an accused's conduct, at the time of the alleged crime may be reasonably referred to two motives, one criminal and the other innocent, then the jury should presume the innocent and not the criminal motive." Consequently it was properly refused. A different situation as to the evidence was present in State v. Carey, 34 Nev. 309, 122 P. 868, cited by defendant. The fact that the court instructed the jury "that if you believe from the evidence, beyond a reasonable doubt, that the defendant did, on or about the 25th day of June, 1941, at Elko, State of Nevada, sell to one William Anderson a quantity of marihuana, the weight of which is in excess of one ounce, then you shall find the defendant guilty as charged," gives him no cause for complaint. On the whole the jury was fairly instructed and neither in giving or refusing of any instruction was there prejudicial error. The fixing of the weight in excess of one ounce was an error favorable to defendant, as under the uniform narcotic drug act the weight of the drug sold is immaterial. However, the court committed error in sentencing defendant under said section 5 of the 1923 act. His sentence should have been imposed under section 20 of the uniform narcotic drug act. But the error does not require a reversal. State v. Holdaway, 56 Nev.

278, 48 P.(2d) 420; State v. Pansey, 61 Nev. 330, 128 P.(2d) 464.

It is ordered that the order of the court overruling the demurrer of defendant to the amended information be and the same is hereby affirmed; it is further ordered that the judgment of the court be, and the same is hereby affirmed to the extent that defendant be confined in the state prison of Nevada; but the cause is remanded to the district court with directions that it pronounce and enter judgment against the defendant in accordance with the provisions of section 20 of the uniform narcotic drug act of 1937.