UNITED STATES of America
v.
John MOORE, Appellant.
No. 19286.

United States Court of Appeals,
Third Circuit.

Argued April 6, 1971.

Decided July 23, 1971.

---

John W. Packel, Chief Appeals Division, Defender Association of Philadelphia, Philadelphia, Pa., for appellant.

Edwin E. Naythons, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

OPINION OF THE COURT

GANEY, Circuit Judge.

Appellant appeals from his conviction of unlawfully acquiring, concealing and transferring marihuana on two separate occasions in violation of 26 U.S.C. §§ 4744(a) (1), 4744(a) (2) and 4742(a), respectively.

He claims he was denied due process of law when the government paid a known narcotics user to inform on him and then made no systematic effort to insure his availability at trial, even though the informer was an eye witness to the alleged crime. At the trial a special undercover narcotics agent testified that in response to a telephone call from a known narcotics user who was paid by the Government on a per diem basis for information, he went to the corner of Broad Street and Washington Avenue in Philadelphia, where he met the informer who introduced him to appellant. The agent bought three ounces of marihuana from appellant in the presence of the informer and another undercover agent. After the sale appellant gave the agent a telephone number and told him to call that number and ask for John, if he desired to make further purchases. A week later after he had made a phone call to John the agent made a second purchase from appellant at another location in the City. The informer was not present during the transaction but the meeting was observed from a distance by the same agent who had witnessed the first sale. Appellant was arrested six months later and charged in a six-count indictment with the unlawful possession, concealment and sale of marihuana.

The claim is without merit. Though appellant knew the informer and that he was present at the first sale, the defense made no attempt to learn of either his whereabouts prior to trial or whether the prosecution was going to call him as a witness. The defense of entrapment was not asserted. No prosecutional misconduct had been established. The Government did not try to conceal the informer's identity from the defense or that he was present at the first sale. Moreover, the district court found on a sufficient explanation by the agents that the Government made a reasonable effort to produce the informer at trial. Although the details of the

part played by the informer in the first sale and his relationship with the appellant are unknown, the situation is not the equivalent of allowing the Government to withhold information forbidden in Roviaro v. United States, 353 U.S. 53, 63, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), of the identity and whereabouts of a paid informer who was present at the occurrence of the crime.

■ Appellant's other contention is that the proof did not sustain the verdicts in that the Government did not establish the identity of the substance transferred. The prosecution called to the stand a federally employed chemist who had inspected the substance received by the special agent from appellant on both occasions. He testified that he subjected the contents of each sample to a microscopic examination and to the Dukanoid test and concluded they were marihuana. On cross-examination he stated that he knew of no other substance which would give a Dukanoid positive reaction. His answer to defense counsel's question "Can you tell the difference between Cannabis sativa and Cannabis indica" was no. By reason of the latter answer, appellant argues that the government had not met its burden of proving the substances were marihuana because they may have been Cannabis indica, instead of Cannabis sativa L., and that only the latter substance is proscribed by the Internal Revenue Code.

Before this argument may have any validity, Cannabis indica must in fact not be a substance called Cannabis sativa L. or marihuana.

Marihuana, a term of Mexican origin, is the dried leaves and flowering tops of a plant species commonly known as hemp. Botanically, the hemp plant is called Cannabis sativa L.[1] There is only one species of this plant. Leary v. United States, 395 U.S. 6, 50, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). However, because of the difference in soil content and climatic conditions, the plant grown in various parts of the world is not physically the same. For example, Mexican marihuana is more potent than domestic and is consequently preferred by smokers. Leary v. United States, *supra*, at 49, 89 S.Ct. 1532. Cannabis indica is the name given to Cannabis sativa L. grown in India. 12 C.J.S. Cannabis pp. 1111, 1112.[2] We agree with the District Court that "Congress intended the inclusion of the indica variety within the definition of marihuana as set forth in 26 U.S.C. § 4761(a)."[3] Hence appellant's argument has no validity, and the Government had met its burden of proving that the substances transferred were marihuana. The fact that § 7 of the Act of March 3, 1915, 38 Stat. 820, Title 21 (Food and Drugs), U.S.C. § 209, proclaiming it to be unlawful for any person or firm whose permanent allegiance is due the United States to sell or deliv-

1. The statutory definition of marihuana appears in 26 U.S.C. § 4761(2), as follows:
   "Marihuana.—The term marihuana means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture, or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination."

2. "The hemp plant of India has been considered by some as a distinct species, and named *Cannabis indica;* but the most observant botanists, upon comparing it with our cultivated plant, have been unable to discover any specific difference. It is now, therefore, regarded merely as a geographical variety. Pereira states that in the female plant the flowers are somewhat more crowded than in the common hemp, but that the male plants in the two varieties are in all respects the same." The Dispensatory of the United States, .22nd Ed., (Lippincott, 1940), p. 275. Also see Hearings before the Committee on Ways & Means, House of Representatives, 75th Cong., 1st Sess. (H.R.6385) pp. 18–19, 37–38, 55.

3. 330 F.Supp. 684, 686 (E.D.Pa.1970).

er to any other person the substances listed therein, including Cannabis indica, does not detract from this conclusion. That section, as pointed out by the District Court, was intended to prohibit the transfer of that substance in the United States consular districts in China.

The judgment of the District Court will be affirmed.