545 P.2d 484

STATE of Idaho, Plaintiff-Respondent,

v.

James L. MILES et al., Defendants-Appellants.

Nos. 11825, 11827, 11839.

Supreme Court of Idaho.

Jan. 16, 1976.

James F. Judd, Post Falls, for appellant Miles.

Thomas A. Mitchell, Coeur d'Alene, for appellant Lassfolk.

Richard P. Wallace, Coeur d'Alene, for appellant Krull.

Wayne L. Kidwell, Atty. Gen., Gordon S. Nielson, Sr. Deputy Atty. Gen., Lynn E. Thomas, James W. Blaine, Deputy Attys. Gen., James F. Kile, Asst. Atty. Gen., Boise, and Gary M. Haman, Sp. Asst. Atty. Gen., Coeur d'Alene, for respondent.

DONALDSON, Justice.

This is an appeal from a jury determination that appellants James L. Miles and John J. Lassfolk were guilty of unlawful delivery of a controlled substance and appellant Barrett P. Krull was guilty of unlawful possession of a controlled substance with intent to deliver the same.[1]

The main issues facing this Court are: (1) Was the substance seized at the time of arrest shown beyond a reasonable doubt to be marijuana as defined by the Idaho Legislature? (2) Was the marijuana seized from appellant Krull's car the fruit of an illegal search? The facts pertinent to this review are as follows.

On August 4, 1974, Terry Perkins, a state narcotics agent, bought approximately 30 pounds of marijuana from appellants James Miles and John Lassfolk at Miles' home. Miles then told Perkins that the remaining 20 pounds of marijuana Perkins wanted to buy would be arriving in 45 minutes so he waited at the Miles' residence for the delivery. Miles did not mention any names or the type of vehicle that would be bringing the marijuana.

Approximately 2 hours later appellant Barrett Krull and Rosemary Saavedra drove into Miles' driveway and stepped out of their car. At this point there is conflicting testimony as to what happened. Perkins testified that he and fellow officer Doug Williams came out of the house and asked Krull if he had the other 20 pounds, and after Krull responded "yea" and turned to his car, Perkins pulled his gun and told Krull and Saavedra to lie on the ground. Perkins then got the keys to the car and opened the trunk, finding a large quantity of marijuana.

Krull and Saavedra, on the other hand, testified that Perkins and Williams came out of the house, pulled their guns, told them to lie down and then unlocked the trunk. They claim no question concerning the marijuana was put to Krull by Perkins or Williams.

At trial, William Martin, a state chemist, testified that his identification of the alleged controlled substance consisted of a microscopic examination, a thin-layer cromatography test and a visual examination of the substance. Martin was unable to make a specific identification of the alleged substance as being Cannabis sativa L. but was able to identify it as marijuana containing tetrahydrocannibinol, popularly known as THC. Defense witness Professor William Barry, an expert witness of

---

[1]  I.C. § 37–2732(a)(1)(B) provides:

"(a) Except as authorized by this act, it is unlawful for any person to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance.

(1) Any person who violates this subsection with respect to:

(B) Any other controlled substance which is a nonnarcotic drug classified in schedule I, or a controlled substance classified in schedule III, is guilty of a felony and upon conviction may be imprisoned for not more than five (5) years, fined not more than fifteen thousand dollars ($15,000), or both;"

the appellants, testified that the substance could not be identified with any certainty to a species level such as Cannabis sativa L.

At the time of the arrest, marijuana was defined as:

"all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination." I.C. § 37–2701(n) (1971).

On appeal appellants argue in their first assignment of error that the state failed to show beyond a reasonable doubt that the marijuana was the statutorily proscribed substance. They claim that the state has the burden of proving that the marijuana was of the species Cannabis sativa L., and point to the expert testimony of state witness Martin, who was unable to make such a determination.

■ The enactment of I.C. § 37–2701(n) in 1971, was merely part of the legislature's adoption of the Uniform Controlled Substance Act as promulgated in 1970 by the National Conference of Commissioners on Uniform State Laws.[2] The definition of marijuana used by both the Conference and the Idaho Legislature was virtually an intact duplication of the definition of marijuana as stated in the Federal narcotics and dangerous drug law, the "Comprehensive Drug Abuse Prevention and Control Act of 1970" (Public Law 91–513, short title "Controlled Substance Act").[3] While this Court has not been faced with interpreting this statute, there is an available body of federal decisions which is most persuasive.[4]

The United States Court of Appeals, in United Stated v. Walton, 168 U.S.App.D.C. 305, 514 F.2d 201 (1975), noted that presently there is no reliable method for distinguishing between the various species of marijuana. The court went on to say:

"It may be that the government has the capacity to develop a method but since Congress did not have the benefit of any such method when it enacted the statute in issue here, one must certainly pause to consider why Congress would enact a law the violations of which could not be proven on the basis of present knowledge." United States v. Walton, supra, at 203.

■ This Court agrees with the Walton court's reasoning when, in reviewing the legislative history of the Marijuana Tax Act of 1937, it said:

"we find that the definition of marijuana was intended to include those parts of marijuana which contain THC and to exclude those parts which do not. Furthermore, there was no testimony * * * before the Congress that marijuana was anything other than monotypical and there is no discussion in the Congressional reports of different species of marijuana. * * * The legislative history is absolutely clear that Congress meant to outlaw all plants popularly known as marijuana to the extent those plants possessed THC." United States v. Walton, supra, at 203–204.

While a small minority of courts have read the statute to apply only to Cannabis sativa

2. See, Uniform Laws Annotated, vol. 9, p. 145–357.

3. See, 21 U.S.C. § 802(15) (1970).

4. This Court has oftentimes stated that it must assume that the legislature, in adopting a statute from another jurisdiction, intended to adopt prior construction of such statute by courts of the jurisdiction. Doggett v. Electronics Corp. of Am., Combust.Con.Div., 93 Idaho 26, 454 P.2d 63 (1969).

L., and to nothing else,[5] this Court is swayed by the reading given to this statute by the great majority of courts[6] and hold that sufficient evidence was introduced to substantiate the offenses of possession and unlawful delivery of marijuana, as defined under I.C. § 37–2701(n) prior to its amendment in 1975.

■■ Appellant's second assignment of error deals with the trial court's refusal to permit appellants to conduct recross-examination of the state's witness D. J. Williams after the state's redirect examination. While it is true that when new evidence is elicited on redirect examination, the opposing party must be given the right of re-cross-examination on the new material,[7] such is not the case here. Our examination of the record discloses no new evidence that was opened up on redirect examination. The court did not err in not permitting recross-examination by the four defense attorneys.

The Court now turns to appellant Krull's argument that the marijuana found in the trunk of his car was the product of an illegal search and seizure.

In *State v. Harwood,* 94 Idaho 615, 617–618, 495 P.2d 160, 162–163 (1972), this Court noted the well-established rule,

" * * * that searches without a warrant are per se unreasonable unless falling within certain specific and well-delineated exceptions.

\* \* \* \* \* \*

"The exceptions to searches conducted outside the judicial process without a warrant include the following: (a) Search incident to and following a lawful arrest, but only of the suspect's person and of areas within his immediate reach or physical control necessary to protect police against hidden weapons, destruction of the evidence or fruits of the crime, etc. (b) Search of a vehicle upon probable cause to believe that the vehicle contains articles that the officers are entitled to seize and where the ease and probability of mobility for escape or destruction of the evidence is clear. (c) Consent searches where such consent is knowing and voluntary. (d) Search, with probable cause, for and in hot pursuit of a fleeing and dangerous felony suspect. (c) Search of abandoned real estate or personal property. (f) A search under urgent necessity (a medical emergency or screams from within a dwelling). (g) Search pursuant to custodial prerogative (as in a vehicle held for forfeiture). (h) Search, with probable cause, necessary to prevent loss or destruction of the thing to be seized." (cites omitted.)

The state argues the validity of the search on the alternative theories as stated in (a) and (b) above.

■ When a valid arrest takes place, a warrantless search incident to that arrest is reasonable if, as stated above, the purpose of said search is to seize evidence which the defendant could conceal or destroy. The scope of such a search, however, is limited to the defendant's person and the area within his immediate control. The United States Supreme Court, in formulating this warrantless search exception,

5. *United States v. Lewallen,* 385 F.Supp. 1140 (D.C.1974).

6. *United States v. Walton, supra; United States v. Honneus,* 508 F.2d 566 (1st Cir. 1974); *United States v. Kinsey,* 505 F.2d 1354 (2d Cir. 1974); *United States v. Gaines,* 489 F.2d 690 (5th Cir. 1974); *United States v. Rothberg,* 480 F.2d 534 (2d Cir. 1973), cert. denied, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973), aff'g, 351 F. Supp. 1115 (E.D.N.Y.1972); *United States v. Moore,* 446 F.2d 448 (3d Cir. 1971), aff'g, 330 F.Supp. 684 (E.D.Pa.1970); *State v. Shaw,* 344 A.2d 410 (Me.1975); *Cassady v. Wheeler,* 224 N.W.2d 649 (Iowa 1974); *State v. Romero,* 74 N.M. 642, 397 P.2d 26 (1964); *People v. Savage,* 64 Cal.App.2d 314, 148 P.2d 654 (1944); *Martinez v. People,* 160 Colo. 241, 417 P.2d 485 (1966); *State v. Alley,* 263 A.2d 66 (Me.1970); *State v. Allison,* 466 S.W.2d 712 (Mo.1971); *State v. Economy,* 61 Nev. 394, 130 P.2d 264 (1942).

7. *See State v. Wheeler,* 70 Idaho 455, 220 P.2d 687 (1950).

construed the phrase " 'within his immediate control' * * * to mean the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).

■ It is beyond the conception of this Court to see how the appellant, Krull, lying on the ground and guarded by two police officers, would have been able to gain possession and destroy evidence *locked* in the trunk of his car. We find that the search of the appellant's car went beyond the scope of searches allowed under the "incident to arrest" principle and thus, need not consider the validity of the warrantless arrest.

The state also attempts to support the search of Krull's car on the principle that the search of an automobile is permissible without a warrant if probable cause exists to believe the car is carrying contraband and it is probable that the car could quickly leave the jurisdiction. *See, Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924).

Again, the Court need not reach the issue of probable cause, as the state fails to show that it was impracticable to obtain a search warrant prior to searching the car, as the *Carroll* court demands.[8]

■ The state argues that it was impracticable to secure a search warrant because it was 8:30 on Sunday evening and the police were worried about the possibility of someone driving the car away. The record shows that all the occupants of the house, which is in a relatively isolated area on the east side of Lake Coeur d'Alene, were under arrest at the time of the search, making it mere speculation that someone could be lurking in the area ready to drive the car away. The United States

Supreme Court, when faced with this same argument, stated:

"A person who had the keys and could slip by the guard could drive it away. We attach no constitutional significance to this sort of mobility.

"First a good number of the containers that the police might discover on a person's property and want to search are equally movable, e.g., trunks, suitcases, boxes, briefcases, and bags. How are such objects to be distinguished from an unoccupied automobile—not then being used for any illegal purpose—sitting on the owner's property? It is true that the automobile has wheels and its own locomotive power. But given the virtually universal availability of automobiles in our society there is little difference between driving the container itself away and driving it away in a vehicle brought to the scene for that purpose. Of course, if there is a criminal suspect close enough to the automobile so that he might get a weapon from it or destroy evidence within it, the police may make a search of appropriately limited scope. [cites omitted.] But if *Carroll v. United States* [cites omitted] permits a warrantless search of an unoccupied vehicle, on private property and beyond the scope of a valid search incident to an arrest, then it would permit as well a warrantless search of a suitcase or a box. We have found no case that suggests such an extension of *Carroll.*" *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 n. 18, (1971)

Taking judicial notice of the fact that there are four magistrates in Coeur d'Alene available for issuing search warrants, it would not seem unduly burdensome on the police to station one of four officers present with the car, while the

---

8. " * * * the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store * * * and [an] automobile for contraband goods, *where it is not* *practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."* (emphasis added) *Carroll v. United States, supra,* 267 U.S. at 153, 45 S.Ct. at 285.

others made the short drive into town to secure the search warrant. Here, there simply were no exigent circumstances making it impractical to gain a search warrant. The Court in *Coolidge* noted "that the word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears." *Coolidge v. New Hampshire, supra.* This being the case, the district court erred in denying appellant's pretrial motion to suppress as evidence the marijuana found in appellant's automobile, such evidence being the product of an illegal search and seizure of appellant's automobile.

Finally, concerning appellants Miles and Lassfolk's assignments of error claiming the trial judge abused his discretion in that the sentences imposed were excessive, we note that the sentences imposed were well within the statutory limits[9] and thus there was no abuse of discretion by the trial judge.

In accordance with this opinion, the judgment is affirmed as to appellants Miles and Lassfolk and reversed as to appellant Krull.

McQUADE, C. J., and BAKES, J., concur.

SHEPARD, Justice (dissenting).

I would affirm the conviction. I find no authority which requires a search warrant under these facts. Clearly, probable cause to search the trunk of the vehicle in question existed. The majority does not even argue the point.

It would serve little purpose to reiterate my recent dissent in *State v. Oropeza,* 97 Idaho 387, 545 P.2d 475 (1976). I would merely note that the authorities cited therein support a finding of exigent circumstances justifying a warrantless search and that the majority misreads the holding of *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

McFADDEN, J., concurs.

9. *See,* I.C. § 37–2732(a)(1)(B), *supra* n. 1.