625 P.2d 1093

STATE of Idaho, Plaintiff-Appellant,

v.

Chris A. BOTTELSON, Defendant-Respondent.

No. 13428.

Supreme Court of Idaho.

March 20, 1981.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, William Appleton, County Deputy Pros. Atty., Coeur d'Alene, for plaintiff-appellant.

Alan M. Wasserman, of Nordlof & Loats, Coeur d'Alene, for defendant-respondent.

BAKES, Chief Justice.

At approximately 10:00 a. m. on April 6, 1979, Keith Hendrick, a special deputy for the Kootenai County sheriff, was returning home from Coeur d'Alene. He was traveling south on State Highway 95 in his private automobile, accompanied by Henry Wilson, who was also a special deputy. As Hendrick drove by the farmhouse residence of Jeff and Bonnie Rice he saw an unfamiliar car backed up to the house.

Being a friend of the Rices, Hendrick knew that both Jeff and Bonnie Rice were normally not home at that time of the day and that the car he saw, a 1966 Pontiac, did not belong to the Rices. Hendrick drove into the driveway of the Rice residence where he saw the Pontiac backed up to the house. The trunk of the Pontiac was open, and the defendant Bottelson was standing at the rear of the automobile. The defendant shut the trunk lid when he saw the officers approaching.

Upon request the defendant showed Hendrick a Minnesota driver's license and a vehicle registration for a Chrysler. The Pontiac bore Minnesota license plates which were the plates matching the Chrysler registration. Officer Hendrick observed a window missing from the Rices' residence, and Officer Wilson observed that a door leading from the front porch into the house was standing open. Hendrick then directed the defendant to open the trunk of the Pontiac. The defendant complied and inside the trunk were found various items of property belonging to Jeff and Bonnie Rice.

Bottelson was arrested and, following the reading of the *Miranda* warnings, he admitted taking property from the Rice residence. At the preliminary hearing the magistrate found that there was probable cause for Hendrick to believe that the Pontiac's trunk contained evidence and that there was exigency at the time of the search. However, later at a suppression hearing prior to trial, the district judge, citing our decisions in *State v. Miles*, 97 Idaho 396, 545 P.2d 484 (1976), and *State v. Post*, 98 Idaho 834, 573 P.2d 153 (1978), ordered the property from the trunk to be suppressed. The sole issue raised on this appeal taken by the state is whether the evidence obtained through the warrantless search of the automobile trunk was improperly suppressed.

The fourth amendment protects the privacy and security of persons in two important ways. First, it guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In addition, the amendment has been interpreted to require, except for a few "jealously and carefully drawn" exceptions, that searches of private property be performed pursuant to a valid search warrant. *Arkansas v. Sanders*, 442 U.S. 753, 757–58, 99 S.Ct. 2586, 2589–90, 61 L.Ed.2d 235 (1979). However, to claim the protection of the fourth amendment, a person must show that he had a legitimate expectation of privacy in the invaded place. *Rawlings v. Kentucky*, 448 U.S. 633, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

On the present record the defendant has not shown that he had a legitimate expectation of privacy in the Pontiac. The motion to suppress in this case was submitted by the defendant on the basis of the evidence presented at the preliminary hearing. The only evidence submitted at the preliminary hearing was by the state, consisting primarily of the testimony of Officer Hendrick and Jeffrey Rice, the owner of the premises. The defendant presented no evidence.

While the evidence discloses that the Pontiac was in the possession of the defendant, the registration for the automobile presented to the officers was for a different Chrysler automobile, and the license plates which were on the Pontiac were registered to the Chrysler. Since the defendant had the burden of proving that he had a legitimate expectation of privacy in the Pontiac, *Rawlings v. Kentucky, supra*, and there is no showing in the evidence that the defendant owned or had a right to possess the Pontiac, the order of the trial court suppressing the evidence cannot be sustained on this record. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). A court may not exclude evidence under the fourth amendment unless it finds that an unlawful search or seizure violated the defendant's legitimate expectation of privacy. *United States v. Payner*, 447 U.S. 727, 100 S.Ct. 2439, 2444, 65 L.Ed.2d 468 (1980).

Even assuming that the defendant could show a possessory interest in the Pontiac, we believe his motion for suppression must fail. In addition to bearing the burden of proving a legitimate expectation of privacy, the defendant must show that the search was illegal in order to successfully suppress the evidence obtained in the search. The burden is on the defendant to show the illegality of the search. *Rawlings v. Kentucky*, 100 S.Ct. at 2561. However, once the search is shown to have been made without a warrant, the search is deemed to be *"per se* unreasonable," *Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 43, 66 L.Ed.2d 142 (1980), and the burden shifts to the state to show that the search was pursuant to one of the exceptions to the warrant requirement. *Arkansas v. Sanders*, 442 U.S. at 760, 99 S.Ct. at 2591. In the case at bar, the state admits the warrantless search, but argues that the search was permissible under the automobile exception to the warrant requirement established under *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and its progeny.

■ The rule of the automobile exception is that "the constitution does not require a search warrant . . . when the police stop an automobile on the street or highway because they have probable cause to believe it contains contraband or evidence of a crime." *Arkansas v. Sanders*, 442 U.S. at 760, 99 S.Ct. at 2591; *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). The rule applies not only when an automobile is stopped by the police, but also when the automobile is already stopped when the police arrive. *See Colorado v. Bannister*, 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 142 (1980) (automobile already stopped at gas station). *Cf. State v. Fowler*, 101 Idaho 546, 617 P.2d 850 (1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981) (voluntary pullover with knowledge that police were following). Although the automobile exception does not generally extend to the warrantless search of luggage within an automobile, *Arkansas v. Sanders, supra; United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), the exception does include within its bounds the warrantless search of automobile trunks, *Arkansas v. Sanders*, 442 U.S. at 762, 99 S.Ct. at 2592; *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), glove compartments, *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1975), and other concealed compartments, *Chambers v. Maroney, supra*.

It is true that the Supreme Court in *Chambers v. Maroney, supra*, suggested that there may be some conceivable circumstances, even when probable cause exists, where a warrantless search of an automobile would be improper. However, those situations as yet remain undefined. The underlying rationale of the automobile exception, as developed in *Carroll v. United States, supra*, and *Chambers v. Maroney, supra*, is that the mobility of an automobile greatly increases the likelihood that evidence of a crime will be destroyed once the occupants are alerted. 399 U.S. at 51, 90 S.Ct. at 1981.

In the plurality decision of *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), four justices in the lead opinion severely attacked the mobility rationale, and construing *Chambers* narrowly, implied that an automobile should be secured and a warrant obtained if possible before undertaking a search. 403 U.S. at 460–63, 91 S.Ct. at 2034–36; *see* 403 U.S. at 504, 91 S.Ct. at 2057 (J. Black, concurring and dissenting). However, *Chambers* clearly indicated that there is no difference between "on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the fourth amendment." 399 U.S. at 52, 90 S.Ct. at 1981; *see Coolidge v. New Hampshire*, 403 U.S. at 504, 91 S.Ct. at 2057 (J. Black, concurring and dissenting).

Neither *Chambers* nor *Coolidge* is an image of clarity. However, since *Coolidge*, it has become evident that *Chambers* is being read more broadly than indicated in *Coolidge*. In *Texas v. White*, 423 U.S. 67, 69, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975), the Supreme Court reaffirmed *Chambers per curiam*, holding that a warrantless search of an automobile upon probable cause is proper even after the automobile had been secured and taken to the police station. *Chambers* has, as already mentioned, also been applied *per curiam* to approve a warrantless search not only when an automobile is stopped by the police, as originally indicated in *Chambers*, 399 U.S. at 51, 90 S.Ct. at 1981; *see Coolidge v. New Hampshire*, 403 U.S. at 460, 91 S.Ct. at 2035, but also when the vehicle is already stopped before the police arrive. *Colorado v. Bannister, supra; cf. State v. Fowler, supra*. In addition, it has become evident since *Coolidge* that the automobile exception rests not only on the mobility rationale, but also on the rationale that "configuration, use, and regulation of automobiles often may dilute the reasonable expectation of privacy that exists with respect to differently situated property." *Arkansas v. Sanders*, 442 U.S. at 760, 99 S.Ct. at 2591.

As measured by the constitutional standards reflected in the cases cited above, we think that the officers in the case at bar were justified under the fourth amendment in searching the trunk of the Pontiac without first obtaining a warrant. There was abundant probable cause that the automobile contained evidence of a crime. The foreign automobile backed up to the house with its trunk open, the removed window pane, the opened porch door, the defendant's closing of the trunk door when the officers arrived, the suspicious automobile registration, and all the other circumstances evident to the officers clearly made it highly probable that a burglary was being committed and that evidence of the crime was in the trunk of the Pontiac.

The trial court granted the motion to suppress based upon our decision in *State v. Miles*, 97 Idaho 396, 545 P.2d 484 (1976), which held that absent exigent circumstances making it impractical to obtain a search warrant, a guard must be posted or the automobile impounded until a search warrant is obtained. Since it appears that one of the officers left the scene to obtain a police car (they had only a private vehicle), while the other remained with the defendant and the Pontiac, the trial court concluded that the officers would have been equally able to procure a search warrant.

Our decision in *Miles* was premised upon the decision in *Coolidge v. New Hampshire, supra*, and was an attempt to discern the direction of the United States Supreme Court. In light of the renewed emphasis on *Chambers* in the recent cases of *Texas v. White supra, Arkansas v. Sanders, supra*, and *Colorado v. Bannister, supra*, it appears that, in the situation presented here, either securing the automobile and then obtaining a warrant, or proceeding with a warrantless search would have been reasonable under the fourth amendment. 399 U.S. at 52, 90 S.Ct. at 1981. *See State v. Fowler*, 101 Idaho 546, 617 P.2d 850 (1980) (Bistline, J., concurring opinion). Since "[e]ach time the exclusionary rule is applied it exacts a substantial social cost," *Rakas v. Illinois*, 439 U.S. at 137, 99 S.Ct. at 427, we do not think it appropriate to continue the exclusion of evidence on the basis of *Miles* where the search is permissible under the fourth amendment as construed by the United States Supreme Court. Consequently, *State v. Miles, supra*, and *State v. Post*, 98 Idaho 834, 573 P.2d 153 (1978) (which followed *Miles*), are disapproved to the extent that they conflict with this opinion.

The order of the district court is reversed.

McFADDEN, BISTLINE, DONALDSON and SHEPARD, JJ., concur.

BISTLINE, Justice, specially concurring.

To me it would be most appropriate for the Court to emphasize that the district judge is reversed not because he was wrong, but because the Court has been wrong. The only district court fault, but not error, was in following the law as the Idaho Supreme Court declared the law to be.

Six months ago I pointed out in *State v. Fowler*, 101 Idaho 546, 617 P.2d 850 (1980), that Judge Prather in that case brought our attention to the problems created by *Miles* and *Post*. I specifically quoted his statement that "even though *Miles* may be too recent to be overruled, it is important to realize that the *Miles* decision totally fails to address the case of *Chambers v. Maroney*." There I noted that the question was squarely before the Court, but the Court declined to even mention *Miles* or *Post*, let alone discuss *Chambers*. In what was to be only a solo effort I discussed *Chambers, Miles* and *Post*, distinguishing *Miles* and *Post* on their facts from *Fowler* and concluding that the facts in *Fowler* were more similar to those in *Chambers* than those in *Miles* or *Post*. In coming to grips with this case, while *Fowler* was perhaps distinguishable from *Miles* and *Post*, this case cannot be distinguished from *Chambers*. I am certain that the judges of the First District will welcome, as I do, that we now have for the first time an opinion of the Court discussing *Chambers* and its relationship to *Miles* and *Post*. Assuming that a disapproval of those cases is tantamount to their being overruled, I concur.