411 So.2d 372 (1982)
STATE of Florida, Appellant,
v.
Maurice L. HOWARD, Allen Ponder and John W. French, Appellees.
No. 81-255.
District Court of Appeal of Florida, Fourth District.
March 31, 1982.
Rehearing Denied June 1, 1982.
*373 Jim Smith, Atty. Gen., Tallahassee, and Andrea T. Mohel, Asst. Atty. Gen., West Palm Beach, for appellant.
Harvey Watnick and Richard Hersch, Coconut Grove, for appellee-Howard.
Philip G. Butler, Jr., West Palm Beach, for appellee-Ponder.
David Roth, West Palm Beach, for appellee-French.

ON PETITION FOR REHEARING
LETTS, Chief Judge.
The petition for rehearing is granted and our prior opinion issued on February 10, 1982, is hereby withdrawn. It has been correctly pointed out to us that our previous decision dealt only with the arrest powers of wildlife officers and failed to address the search and seizure authority of those same officers. Because of this omission, the court finds it necessary to reconsider its earlier opinion.
The State is appealing the grant of a motion to suppress because the stop, arrest and search, which turned up in excess of one hundred pounds of cannabis, was carried out by wildlife officers. We reverse.
The facts are that a wildlife officer on duty at 9:30 p.m. observed two trucks behaving suspiciously and believing some game violation was involved he questioned the occupants as to what they were about. He received at least one answer which he knew from his own observation to be untrue, nonetheless he pretended to leave the area and secreted himself nearby to await developments. Thereupon the two trucks took up station facing each other on the roadway about a mile apart with their headlights on. Shortly thereafter, a low flying plane with no lights appeared and landed on the road between them. The officer could not see the activities at ground level but heard a great many noises suggesting loading and unloading by several participants. At this point the officer, believing a major drug deal was in progress, called for back up units and the trucks, as they were leaving, were stopped, the occupants arrested and the vehicles searched.
There is more than one defendant involved and their respective counsel make different points on appeal. The defendant Howard argues that wildlife officers are not constitutionally empowered to make any arrests for the violation of any of the laws of the state other than those relating to game, fish and wildlife. The defendants Ponder and French argue that the question presented is not so much whether wildlife officers can effect an arrest, but whether they are duly authorized to conduct a search of a vehicle, looking for anything other than fish, game and wildlife violations. We will treat these two issues in order.
Commencing with the power to arrest, we refer first to Section 372.07(1), Florida Statutes (1979) which in part provides:
372.07 Police powers of commission and its agents. 
(1) The Game and Fresh Water Fish Commission, the director and his assistants designated by him, and each wildlife officer are constituted peace officers with the power to make arrests for violations of the laws of this state when committed in the presence of the officer or when committed on lands under the supervision and management of the commission.
*374 To us this quoted subsection is perfectly clear and means exactly what it says, i.e. each wildlife officer has the power to make arrests for violations of the laws of this State when committed in his presence or when committed on lands under his supervision.
The defense argues that to take the above quoted subsection (1) by itself distorts the true picture and that said subsection must be considered in pari materia with the ensuing subsection (2)[1] which grants wildlife officers the power to enforce "all laws relating to game, nongame birds, fresh water fish etc. etc... .," and therefore restricts them to wildlife jurisdiction. However, that argument completely ignores the history of the present statute. The former statute similarly entitled, "Police Powers of Commission and its Agents" did in fact limit the power and authority of wildlife officers to the enforcement of wildlife laws. See Section 372.07, Florida Statutes (1969).[2] However, the current version has added subsection (1) and we are convinced the purpose of that addition was to *375 expand the power and authority of wildlife officers to encompass all violations of the law committed in their presence or on lands under their supervision.
The defense also argues that even if the statute has in fact expanded the authority of wildlife officers, it is in violation of Article 4, Section 9 of the Florida Constitution[3] which created the Game and Fresh Water Commission and limited its regulatory and executive powers to wildlife and aquatic life. There is merit to this argument, but we note that the constitutional provision also permits the legislature to enact laws in aid of the Commission and not inconsistent with its powers.
We see no "inconsistency" in the expansion, for certainly it is not in derogation of the Commission's normal function. Whether the expansion is "in aid" of the Commission is a more difficult question. However, we answer it in the affirmative. The preservation of wild and fish life depends upon the maintenance of the sylvan habitat, peace and solitude necessary to support the ecology of the lands under the Commission's supervision. There can be no doubt that the preservation of Florida's most precious Everglades, and its animal, aquatic and plant life, is not assisted by the presence of an ever increasing swarm of criminals, in airplanes, motor vehicles and boats going about their dirty business and disturbing, for profit, the very peace and solitude which the Commission seeks to uphold.
Turning now to the question of the search, we begin by commenting that, based on the facts, we have no difficulty in deciding that the officer had probable cause to believe that a drug deal was taking place and that exigent circumstances existed for a warrantless search. The trial judge was of the same opinion. The difficulty here is whether wildlife officers are duly authorized to undertake a warrantless search under the dictates of Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) as codified in Section 933.19(1), Florida Statutes (1981). The defendants argue that the officers are specifically not authorized to search for drugs by reason of Section 372.76, Florida Statutes (1981) which provides as follows:
372.76 Search and seizure authorized and limited.  The Game and Fresh Water Fish Commission and its conservation officers shall have authority when they have reasonable and probable cause to believe that the provisions of this chapter have been violated, to board any vessel, boat or vehicle or to enter any fishhouse or warehouse or other building, exclusive of residence, in which game, hides, fur-bearing animals, fish or fish nets are kept and to search for and seize any such game, hides, fur-bearing animals, fish or fish nets had or held therein in violation of law. Provided, however, that no search without warrant shall be made under any of the provisions of this chapter, unless the officer making such search has such information from a reliable source as would lead a prudent and cautious man to believe that some provision of this chapter is being violated.
The defendant avers that this statute precludes a search for anything other than game, hides, fur-bearing animals, fish or fish nets. However, we disagree for two reasons. First, this particular last quoted provision became law in 1936 and at that time, as we have already pointed out, wildlife officers were limited to the enforcement *376 of wildlife laws. Since that time Section 372.07 has been expanded to permit wildlife officers to make arrests for violations of any laws committed in their presence or on Game Commission controlled lands. In our view it is inconceivable that the legislature would intend to expand the power of wildlife officers to permit lawful drug arrests and yet also intend to withhold from them the power of search incident to that lawful arrest. Second, Section 372.76 does not by its terms expressly exclude other kinds of searches, it merely permits them for game, hides, fur-bearing animals, fish and fish nets. The limitation referred to in the section title is not directed to the kind of search but rather to the reliability of the required source of information. Thus, a combination of the obvious legislative intent in enacting Section 372.07 coupled with an absence of language prohibiting other kinds of searches in Section 372.76 leads us to conclude that drug searches are not proscribed by the latter statutory provision.
We believe the wildlife officers were authorized to make an arrest by Section 901.15(3) which reads:
A peace officer may arrest a person without a warrant when ... he reasonably believes that a felony has been or is being committed and reasonably believes that the person to be arrested has committed or is committing it.
There is no question but that a wildlife officer is a peace officer because Section 372.07(1) specifically designates him as such.
Having made the arrest we are of the opinion that the evidence seized without a warrant was the product of a search incident to a lawful arrest based on probable cause arising from facts and circumstances within the officer's knowledge sufficient within themselves to warrant a man of reasonable caution to believe that an offense had been committed Benefield v. State, 160 So.2d 706, 708 (Fla. 1964).
There can be no question that the arrest took place before the search. As counsel for the defense said at the hearing on the motion:
They placed them under arrest. Then they went and conducted their search. Now you can call that anything you want, but that's basically what happened in this case.
We thus conclude that these wildlife officers having been duly authorized to make arrests, carried with that authorization the power in a case such as this to make a warrantless search incident to a lawful arrest.
REVERSED AND REMANDED.
BERANEK, J., and OWEN, WILLIAM C., Jr., (Retired), Associate Judge, concur.
NOTES
[1] (2) Said officers shall have power and authority to enforce throughout the state all laws relating to game, nongame birds, freshwater fish, and fur-bearing animals and all rules and regulations of the Game and Fresh Water Fish Commission relating to wild animal life and freshwater aquatic life, and in connection with said laws, rules, and regulations, in the enforcement thereof and in the performance of their duties thereunder, to:

(a) Go upon all premises, posted or otherwise;
(b) Execute warrants and search warrants for the violation of said laws;
(c) Serve subpoenas issued for the examination, investigation, and trial of all offenses against said laws;
(d) Carry firearms or other weapons, concealed or otherwise, in the performance of their duties;
(e) Arrest upon probable cause without warrant any person found in the act of violating any of the provisions of said laws or, in pursuit immediately following such violations, to examine any person, boat, conveyance, vehicle, game bag, game coat, or other receptacle for wild animal life or freshwater aquatic life, or any camp, tent, cabin, or roster, in the presence of any person stopping at or belonging to such camp, tent, cabin, or roster, when said officer has reason to believe, and has exhibited his authority and stated to the suspected person in charge his reason for believing, that any of the aforesaid laws have been violated at such camp;
(f) Secure and execute search warrants and in pursuance thereof to enter any building, enclosure, or car and to break open, when found necessary, any apartment, chest, locker, box, trunk, crate, basket, bag, package, or container and examine the contents thereof;
(g) Seize and take possession of all wild animal life or freshwater aquatic life taken or in possession or under control of, or shipped or about to be shipped by, any person at any time in any manner contrary to said laws.
(3) It is unlawful for any person to resist an arrest authorized by this section or in any manner to interfere, either by abetting, assisting such resistance, or otherwise interfering with said director, assistants, or wildlife officers while engaged in the performance of the duties imposed upon them by law or regulation of the Game and Fresh Water Fish Commission.
[2] 372.07 Police powers of commission and its agents.  The game and fresh water fish commission and each and every of its duly authorized conservation agents, have power and authority, throughout the state, to enforce all laws relating to game, non-game birds, fresh water fish and fur-bearing animals, and in connection with said laws, in the enforcement thereof and in the performance of their duties thereunder, to go upon all premises, posted or otherwise; execute warrants and search warrants for the violation of said laws; serve subpoenas issued for the examination, investigation and trial of all offenses against said laws; carry firearms or other weapons, concealed or otherwise, in the performance of their duties; arrest upon probable cause without warrant any person found in the act of violating any of the provisions of said laws or, in pursuit immediately following such violations, examine any person, boat, conveyance, vehicle, game-bag, game-coat or any other receptacle for game, non-game birds, fresh water fish or fur-bearing animals, or any camp, tent, cabin or roster in the presence of any person stopping at or belonging to such camp, tent, cabin or roster, when he has reason to believe, has exhibited his authority and stated to the suspected person in charge his reason for believing that any of the aforesaid laws have been violated at such camp; secure and execute search warrants and in pursuance thereof, to enter any building, enclosure or car and to break open, when found necessary, any apartment, chest, locker, box trunk, crate, basket, bag, package or container and examine the contents thereof; seize and take possession of all game, non-game birds, fresh water fish and fur-bearing animals, which may have been taken or had in possession or under control or which have been shipped or about to be shipped at any time or in any manner contrary to said laws.
[3] SECTION 9. Game and fresh water fish commission.  There shall be a game and fresh water fish commission, composed of five members appointed by the governor subject to confirmation by the senate for staggered terms of five years. The commission shall exercise the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life, except that all license fees for taking wild animal life and fresh water aquatic life and penalties for violating regulations of the commission shall be prescribed by specific statute. The legislature may enact laws in aid of the commission, not inconsistent with this section. The commission's exercise of executive powers in the area of planning, budgeting, personnel management, and purchasing shall be as provided by law. Revenue derived from such license fees shall be appropriated to the commission by the legislature for the purpose of management, protection and conservation of wild animal life and fresh water aquatic life.