309 S.E.2d 118

**STATE of West Virginia**

v.

**David M. BOGGESS.**

No. 15751.

Court of Appeals of West Virginia.

Nov. 10, 1983.

---

William W. Pepper and Andrew S. Nason, Charleston, for appellant.

Chauncey H. Browning, Atty. Gen. and Micheal L. Harper, Asst. Atty. Gen., Capitol Bldg., Charleston, for appellee.

McHUGH, Justice.

This case is before this Court upon the petition of the appellant, David M. Boggess, for an appeal from his conviction in the Circuit Court of Putnam County, West Virginia, for the felony offense of possession of marihuana with the intent to deliver.[1] Pursuant to that conviction the appellant was sentenced to the penitentiary for an indeterminate term of not less than one nor more than five years. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel.

In 1981, Kevan Ransom was a conservation officer with the West Virginia Department of Natural Resources.[2] On July 17, 1981, Officer Ransom spotted an automobile parked in an area commonly used for dumping garbage near Route 35 in Putnam County. The evidence at trial revealed that the automobile was a 1980 Oldsmobile and

---

1. Marihuana is a controlled substance pursuant to the West Virginia Uniform Controlled Substances Act. *W.Va.Code,* 60A–1–101, *et seq.*

Pursuant to *W.Va.Code,* 60A–2–204 [1981], marihuana is a "schedule I" controlled substance. The indictment charged the appellant with a violation of *W.Va.Code,* 60A–4–401 [1971], which statute provides, in part, as follows: "Except as authorized by this chapter, it is unlawful for any person to manufacture, deliv-

er, or possess with intent to manufacture or deliver, a controlled substance." Both *W.Va. Code,* 60A–2–204 [1981], and *W.Va.Code,* 60A–4–401 [1971], have been amended since 1981, but those amendments are not relevant to this case.

2. Conservation officers are law enforcement officers under the West Virginia Department of Natural Resources. *See W.Va.Code,* 20–1–13 [1961], and *W.Va.Code,* 20–7–1, *et seq.*

belonged to the appellant, David Boggess. Officer Ransom walked past the automobile and along some railroad tracks to a point where he observed two men standing upon a concrete pad. Spread upon the concrete pad was a large sheet of plastic which, Officer Ransom noted, contained a substance later identified by the State as approximately 17½ pounds of marihuana.

Officer Ransom testified at trial that the appellant, while standing upon the sheet of plastic, picked up handfuls of the substance, looked at the handfuls and smelled them.

The two men were placed under arrest by Officer Ransom at the scene of the offense, and $2800 to $2900, which belonged to the appellant, was found. Other officers of the West Virginia Department of Natural Resources arrived to assist Officer Ransom. The two suspects were then transported to an office of the Department of Natural Resources, and, shortly thereafter, to a Putnam County magistrate's office.

The record indicates that subsequent to the arrest of the appellant, Officer Ransom obtained from the magistrate and executed a search warrant relating to the appellant's automobile.[3] Officer Ransom with the aid of other officers of the Department of Natural Resources, retrieved from the automobile, *inter alia*, a bag labeled "Northern Flight Potatoes" which was similar to another bag labeled "Northern Flight Potatoes" found near the plastic sheet at the scene of the offense.

In November, 1981, the appellant was indicted for possession of marihuana with the intent to deliver.

During the appellant's trial, Trooper Murphy, a chemist employed by the West Virginia State police, testified that he conducted various tests upon the substance in question and determined the substance to be marihuana.[4] He further testified that the marihuana contained the element tetrahydrocannabinol, known as "THC," which, Trooper Murphy indicated, is a psychoactive substance normally found in that part of the marihuana plant other than marihuana stalks and immature seeds. On the other hand, Robert Fornay, the appellant's expert witness at trial, testified that no tetrahydrocannabinol, "THC," was present in the substance in question and that the tests Fornay conducted upon the substance were more reliable than the tests conducted by the State. The appellant asserted at trial that if the substance in question contained no THC, the appellant could not be convicted under the indictment.

On February 2, 1982, the jury found the appellant guilty of possession of marihuana with the intent to deliver. By order entered on February 25, 1982, the appellant was sentenced to the penitentiary.

## I

As indicated above, Officer Ransom, after the appellant's arrest, obtained a search warrant relating to the appellant's automobile. Two bags, one of which was labeled "Northern Flight Potatoes," taken from the trunk of that automobile were admitted in evidence at trial. The appellant con-

3. The search warrant, dated July 17, 1981, obtained by Officer Ransom from the Putnam County magistrate stated, in part, that "the grounds for probable cause for the issuance of this warrant are as follows: David M. Boggess stated he was the owner and operator of car, and marijuana was transported to the area, and it is my reason to believe that the vehicle was used."

4. During the appellant's trial, Trooper Murphy described the substance in question as follows:
    Q. Do you know how much of that was stalk or how much was leafy material?
    A. The majority, the vast majority of the material was leaf fragments and stems, which

are actually parts of the leaves. There was no stalk. There was a small quantity of very immature seed present.
    Q. As a result of your examinations and tests on that material, do you have an opinion as to the identity of the substance contained in each of those plastic bags?
    A. Yes, sir, I do.
    Q. What is that opinion?
    A. That those seven bags contain marihuana.
    . . . .
    Q. Now, you say there were no stalks whatsoever in the substances you looked at?
    A. That's true.

tends, however, that Officer Ransom's authority as a conservation officer was limited to matters concerning the West Virginia Department of Natural Resources, *W. Va. Code*, ch. 20, and that, consequently, inasmuch as this case related to a violation of the West Virginia Uniform Controlled Substances Act, *W. Va. Code*, ch. 60A, Ransom had no authority to execute the search warrant. The appellant asserts that, therefore, the evidence obtained pursuant to the search warrant should have been suppressed at trial.

The trial court considered the search warrant issue and concluded that Officer Ransom, having the authority to arrest the appellant for the marihuana violation, also had the authority to execute the search warrant in question.[5] We agree.

Article 1A of chapter 62 of the West Virginia Code is entitled "Search and Seizure," and section three of that article specifies those persons with authority to execute search warrants. *W. Va. Code*, 62–1A–3 [1965], provides, in part, that search warrants "shall be directed to the sheriff or any deputy sheriff or constable of the county, to any member of the department of public safety or to any police officer of the municipality wherein the property sought is located, or to any other officer authorized by law to execute search warrants." This Court is of the opinion that Officer Ransom, under the circumstances of this case, was an officer "authorized by law to execute search warrants" within the meaning of *W. Va. Code*, 62–1A–3 [1965].

Conservation officers such as Ransom are law enforcement officers of the West Virginia Department of Natural Resources. *W. Va. Code*, 20–1–13 [1961]; *W. Va. Code*, 20–7–1 [1981]. Their powers of arrest and search and seizure are described in *W. Va. Code*, 20–7–4 [1971], and *W. Va. Code*, 20–7–8 [1963]. *W. Va. Code*, 20–7–4 [1971], provides, in part, as follows:

Conservation officers and all other persons authorized to enforce the provisions of this chapter shall be under the supervision and direction of the director in the performance of their duties as herein provided. The authority, powers and duties of the conservation officers shall be statewide and they shall have authority to:

(1) Arrest on sight, without warrant or other court process, any person or persons committing a criminal offense in violation of any of the laws of this State, in the presence of such officer, but no such arrest shall be made where any form of administrative procedure is prescribed by this chapter for the enforcement of any of the particular provisions contained herein;

. . . .

(3) Search and examine, in the manner provided by law, any boat, vehicle, automobile, conveyance, express or railroad car, fish box, fish bucket or creel, game bag or game coat, or any other place in which hunting and fishing paraphernalia, wild animals, wild birds, fish, amphibians or other forms of aquatic life could be concealed, packed or conveyed whenever they have reason to believe that they would thereby secure or discover evidence of the violation of any provisions of this chapter;

(4) Execute and serve any search warrant, notice or any process of law issued under the authority of this chapter or any law relating to wildlife, forests, and all other natural resources, by a justice of the peace or any court having jurisdiction thereof. . . .

Furthermore, *W. Va. Code*, 20–7–8 [1963], provides, in part, as follows:

Any officer, when he arrests or otherwise takes a person into custody for violating any provision or provisions of this chapter, is hereby also authorized and empowered to take and impound any

---

5. The trial court's written opinion dated January 25, 1982, concerning the search warrant issue, stated, in part, as follows:

[I]nasmuch as a conservation officer does have the authority and power to arrest on sight any person committing a criminal offense in violation of any of the laws of this State, said officer would also have the authority to secure and execute such search warrants as may be necessary to follow up and prosecute the offense committed in his presence.

property found in the possession of the accused and susceptible of use in committing the offense of which the person is accused. Such property shall include firearms, fishing equipment, traps, boats, or any other device, appliance or conveyance, but shall not include dogs.

As *W. Va. Code*, 20-7-4(1) [1971], indicates, conservation officers, in addition to their authority relating to the Department of Natural Resources, have authority to "[a]rrest on sight, without warrant or other court process, any person or persons committing a criminal offense in violation of any of the laws of this State, in the presence of such officer...."

A statute similar to *W. Va. Code*, 20-7-4 [1971], is Florida statute 372.07 (1979). Under the Florida statute, such officers, in addition to their authority concerning fish and game matters, have authority to make arrests for violations of the laws of Florida when committed in their presence. *State v. Howard*, 411 So.2d 372 (Fla.App.1982).

The issue in *State v. Howard* was whether Florida wildlife officers were empowered to make an arrest for an offense not relating to game, fish and wildlife and whether those officers were authorized to search a vehicle for a purpose other than to secure evidence of game, fish and wildlife violations. In that case, wildlife officers, seeking to abort a transaction involving in excess of 100 pounds of cannabis, arrested suspects and conducted warrantless searches of certain motor vehicles.

In *State v. Howard*, the District Court of Appeals of Florida held, *inter alia*, that pursuant to Florida statute 372.07 (1979),

the wildlife officers had the power to arrest the suspects involved in the cannabis transaction.[6] Furthermore, the Court confirmed the validity of the warrantless searches of the motor vehicles. Noting that Florida statute 372.07 (1979), originally limited wildlife officers to the enforcement of wildlife laws but, subsequently, was amended to permit wildlife officers to make arrests for violations of laws committed in their presence or on lands under their supervision, the court in *State v. Howard* stated as follows:

> In our view it is inconceivable that the legislature would intend to expand the power of wildlife officers to permit lawful drug arrests and yet also intend to withhold from them the power of search incident to that lawful arrest.
>
> . . . .
>
> We thus conclude that these wildlife officers having been duly authorized to make arrests, carried with that authorization the power in a case such as this to make a warrantless search incident to a lawful arrest.[7]

411 So.2d at 376.

Similarly, as the history of *W. Va. Code*, 20-7-4 [1971], indicates, the arrest powers of conservation officers in this State have been expanded. The original version of *W. Va. Code*, 20-7-4 [1971], indicated that the arrest powers of conservation officers were limited to matters concerning natural resources. *See* Acts of the W.Va. Legislature, ch. 13, sec. 12 (reg. session 1929).

*State v. Howard* was recently cited by the District Court of Appeal of Florida in *Dodds v. State*, 434 So.2d 940 (Fla.App.

---

**6.** The statute before the court in *State v. Howard, supra*, (Florida Statute 372.07 (1979)) provided, in part, as follows:

> 372.07 Police powers of commission and its agents.—
>
> (1) The Game and Fresh Water Fish Commission, the director and his assistants designated by him, and each wildlife officer are constituted peace officers with the power to make arrests for violations of the laws of this state when committed in the presence of the officer or when committed on lands under the supervision and management of the commission.
>
> (2) Said officers shall have power and authority to enforce throughout the state all

laws relating to game, nongame birds, fresh water fish, and fur-bearing animals and all rules and regulations of the Game and Fresh Water Fish Commission relating to wild animal life and freshwater aquatic life....

**7.** The Court in *State v. Howard* noted as follows:

"Turning now to the question of the search, we begin by commenting that, based on the facts, we have no difficulty in deciding that the officer had probable cause to believe that a drug deal was taking place and that exigent circumstances existed for a warrantless search." 411 So.2d at 375.

1983). In *Dodds,* the defendant was arrested by wildlife officers of the State of Florida, and his motor vehicle was impounded. One of the wildlife officers obtained a warrant to search the vehicle, which resulted in the confiscation of 466 pounds of cocaine.

The defendant in *Dodds* challenged the authority of the wildlife officers to make the arrest, and the court set forth that issue as follows: "[W]e are reviewing the officers' arrest powers in the context of the violation of laws not relating to game, nongame birds, freshwater fish, and fur bearing animals and the rules and regulations of the Game and Fresh Water Fish Commission relating to wild animal life and freshwater aquatic life." 434 So.2d at 942. The court upheld the arrest for the reason that, on the night in question, the wildlife officers had a reasonable belief that an offense, trafficking in cocaine, was being committed in their presence. Furthermore, the court in *Dodds* upheld the search of the defendant's motor vehicle. Specifically, the court rejected the defendant's assertion that the affidavit of the wildlife officer for the search warrant was insufficient.

*W. Va. Code,* 20–7–4 [1971], is comparable to Florida statute 372.07 (1979) in terms of granting conservation or wildlife officers the authority to make an arrest for criminal violations of state law committed in their presence. In the case before this Court, the appellant does not challenge the arrest. Nevertheless, we further conclude that Officer Ransom had the authority subsequent to the arrest to obtain and execute the search warrant relating to the appellant's automobile.

In this case, the facts indicate that Officer Ransom in obtaining and executing the search warrant acted within the authority the legislature intended to grant conservation officers within the context of chapter 20 of the West Virginia Code and *W. Va. Code,* 62–1A–3 [1965]. The arrest was for an offense committed in the officer's presence, a substantial amount of marihuana was involved, the automobile of the appellant was parked near the scene of the offense and the search was conducted after the arrest pursuant to a warrant issued by a magistrate.

Under these circumstances, we hold that where a conservation officer, employed by the West Virginia Department of Natural Resources, arrested an individual for the offense of possession of marihuana with the intent to deliver, which offense was committed in the presence of the officer, that arrest was authorized under the provisions of *W. Va. Code,* 20–7–4 (1971), which statute describes the authority, powers and duties of conservation officers. Furthermore, we hold that following a valid arrest by a conservation officer, employed by the West Virginia Department of Natural Resources, for the offense of possession of marihuana with the intent to deliver, the conservation officer was authorized under the provisions of *W. Va. Code,* 20–7–4 [1971], which statute describes the authority, powers and duties of conservation officers, and *W. Va. Code,* 62–1A–3 [1965], which statute concerns search and seizure, to execute a valid search warrant relating to the arrested individual's automobile, which automobile was found at the scene of the offense.

## II

As stated above, the State's chemist testified at trial that the substance in question was marihuana and that it contained the psychoactive ingredient tetrahydrocannabinol, known as "THC." However, Robert Fornay, the appellant's expert witness at trial, testified that the substance did not contain THC. The appellant asserted that if the substance the appellant was charged with possessing with intent to deliver contained no THC, the substance was harmless, and the appellant could not be convicted under the indictment. Therefore, the appellant contends that the trial court committed error in failing to give appellant's instruction number 18 as originally offered, which instruction made a jury finding of THC a requirement of guilt under the indictment.[8] The appellant further contends

---

8. Appellant's instruction number 18 as original-

ly offered to the trial court stated as follows:

that the State has no interest in controlling marihuana which does not contain THC. Consequently, because the appellant was convicted under the Uniform Controlled Substances Act, in the absence of a requirement that the substance in question contain THC, the Uniform Controlled Substances Act, the appellant contends, was applied in this case in an unconstitutional manner. We find those contentions concerning tetrahydrocannabinol or "THC" to be without merit.

"Marihuana" is defined in *W. Va. Code*, 60A–1–101(n) [1981], as follows:

'Marihuana' means all parts of the plant 'Cannabis sativa L.,' whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds, or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake, or the sterilized seed of the plant which is incapable of germination.

The instruction given to the jury by the trial judge concerning the definition of "marihuana" followed verbatim the above statutory language.

> The Court instructs the jury that marijuana means all parts of the plant 'Canabis sativa L.,' whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufactive, [sic] salt, derivative, mixture or preparation of the plant, its seeds or resins. The active ingredient of marijuana is Tetrahydrocannabinol or 'THC.' That is the substance contained in marijuana or in the resinous extraction of the canabis plant and it is the essential chemical characteristic of marijuana, the canabis plant. If you believe that the substance here was from a cannabis plant but did not contain Tetrahydrocannabinol, then you must find the defendant not guilty.

9. In the following cases, some of which were cited by the appellant, the courts stated that marihuana was an illicit substance to the extent that it contained tetrahydrocannabinol, or THC; however, the principal issue in those cases involved whether a particular species or part of the marihuana plant was illicit, rather than whether the presence of tetrahydrocannabinol, or THC, in the substance was the sole determinant of guilt: *United States v. Walton,* 514 F.2d 201 (D.C.Cir.1975), discussing various species of marihuana; *People v. Van Alstyne,* 46 Cal. App.3d 900, 121 Cal.Rptr. 363 (1975), discussing various species of marihuana; *Blakeney v. United States,* 366 A.2d 447 (D.C.App.1976), stating that the amount of THC in marihuana need not be quantified but must be present "to establish that the seized substance is from the portion of the plant proscribed by statute . . .;" *State v. Miles,* 97 Idaho 396, 545 P.2d 484 (1976), discussing various species of marihuana; *State v. Luginbill,* 223 Kan. 15, 574 P.2d 140 (1977), discussing various varieties or species of marihuana, and *Warwick v. State,* 606 P.2d 1139 (Okl.Cr.App.1979), involving an instruction relating to "stalks or seeds incapable of germination." *See* Annot., 75 A.L.R.3d 717 (1977).

We have carefully examined the record in this case and are of the opinion that the evidence submitted to the jury at trial clearly established that the substance in question was marihuana as defined in *W. Va. Code*, 60A–1–101(n) [1981]. The State's chemist identified the substance as marihuana in terms of that statute, *see* n. 4, *supra*, and Robert Fornay, the appellant's witness, did not deny on cross-examination that the substance was marihuana. Testimony concerning the presence of tetrahydrocannabinol, or THC, may be helpful in establishing that a substance is from that portion of the marihuana plant proscribed by the Uniform Controlled Substances Act,[9] but we decline to adopt a requirement that an instruction must contain language as to the presence of THC in order to constitute the crime as defined by our Act.

Accordingly, we hold that an instruction given to the jury in a case involving an alleged violation of the West Virginia Uniform Controlled Substances Act, *W. Va. Code*, 60A–1–101, *et seq.,* which instruction defined "marihuana" by following verbatim the statutory definition of "marihuana" found in *W. Va. Code*, 60A–1–101(n) [1981], was not error. Therefore, the trial court was correct in rejecting the appellant's assertion that the ingredient tetrahydrocannibonol, known as "THC," must be included in the definition of "marihuana" as a requirement of guilt of the offense of posses-

sion of marihuana with the intent to deliver.

■ Finally, the appellant asserts that the evidence at trial was insufficient to support his conviction of the offense of possession of marihuana with the intent to deliver. Specifically, the appellant contends, that he was entitled to a directed verdict of not guilty or to an instruction that the jury could find the appellant guilty of "attempted possession of marihuana with the intent to deliver."

The trial judge instructed the jury as follows:

> The offense charged in the indictment in this case is possession of a controlled substance with the intent to deliver. One of three verdicts may be returned by you under the indictment. They are (1) guilty of possession of marihuana with the intent to deliver; (2) possession of marihuana; (3) not guilty.

*See* State's Instruction No. 1.

This Court finds the evidence submitted to the jury such that the trial court properly refused to direct a verdict on behalf of the appellant and properly refused to consider the appellant's "attempt" theory.

For the reasons set forth above, the appellant's conviction for the offense of possession of marihuana with the intent to deliver is hereby affirmed.

Affirmed.