873 So.2d 476 (2004)
STATE of Florida, Appellant,
v.
Russell D. BELL, Appellee.
No. 2D03-1923.
District Court of Appeal of Florida, Second District.
May 12, 2004.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Marilyn Muir Beccue, Assistant Attorney General, Tampa, for Appellant.
C. Ray McDaniel of C. Ray McDaniel, P.A., Bartow, for Appellee.
VILLANTI, Judge.
The State appeals the trial court's order suppressing all evidence and statements related to the seizure of 114 alligators. Because the trial court applied the wrong legal standard in deciding to suppress the evidence, we reverse and remand.
Around 11:30 p.m. on April 8, 2001, officers of the Florida Fish and Wildlife Conservation Commission (Wildlife officers) received a report that gunshots had been *477 fired in the area they were patrolling. In the predawn early morning hours of April 9, 2001, they traveled to a nearby boat ramp and waited. Ultimately, they saw Bell exiting an airboat carrying two bags, the contents of which the officers could not ascertain from their vantage point. One of the officers shouted either "Wildlife officer" or "Stop, Wildlife officer." In response, Bell dropped the two bags he was carrying and walked toward the officer. The officer then turned on his flashlight and saw that the bags, which were mesh, contained live baby alligators. Shortly thereafter, the other officer discovered two more mesh bags of alligators on the airboat. The alligators were visible to him and were making audible distress sounds. Based on these discoveries, Bell was arrested and charged with 114 counts of possessing or capturing an alligator in violation of section 372.663, Florida Statutes (2001).
Bell moved to suppress all evidence and statements relating to this search and seizure. The trial court conducted an evidentiary hearing, considered argument by counsel, and reserved ruling. Thereafter, relying upon a probable cause standard, the trial court entered an order suppressing "any statements made and evidence seized as a result of" Bell's detention.[1]
The trial court's use of the probable cause standard was error. Although probable cause is required before a warrantless arrest can be made, Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), it is not required for an investigatory stop, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). All that is required for an investigatory stop is reasonable suspicion to believe that the individual has committed, is committing, or is about to commit a crime. Id.; § 901.151, Fla. Stat. (2001). When the Wildlife officer shouted, "Stop, Wildlife officer," he commenced, at most, an investigatory stop, not an arrest.[2] For that investigatory stop to have been valid, therefore, only reasonable suspicion was required, not probable cause.
It appears from the record that the trial court was confused because the State relied upon State v. Pearce, 318 So.2d 455 (Fla. 1st DCA 1975). Pearce involves a somewhat similar stop by a Wildlife officer but under circumstances where the trial court was required to assess the correctness of an arrest under the probable cause standard. In addition to Pearce, however, the assistant state attorney relied upon Terry, explaining that "[w]e are all familiar with Terry v. Ohio. I don't have to go into that."
It is not uncommon for lawyers and judges to intermingle the phrases, "reasonable suspicion" and "probable cause." Often such loose language does not affect the legal analysis. In this case, however, we are convinced that the trial court actually employed a probable cause standard when reasonable suspicion was the correct standard. We therefore reverse the order of suppression and remand for further proceedings in which the trial court must determine whether, under the totality of the *478 circumstances, the Wildlife officers had reasonable suspicion to stop Bell. See United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); State v. Deferance, 807 So.2d 806 (Fla. 4th DCA 2002).
We also note that it is not clear to this court whether the trial court has actually decided that the alligators were seized "as a result of" the stop. These alligators were visible and audible through the mesh bags. The two bags that were still in the boat at the time Bell was detained were not under his immediate control. The boat was moored at a public dock. From the record, it would seem that these alligators were visible in plain view to anyone at the dock who possessed a flashlight. See Pagan v. State, 830 So.2d 792, 808 (Fla.2002) (setting forth the requirements for the plain view exception to the warrant requirement). There was another man in the boat who had received no orders from the officers when the alligators in the boat were discovered. It seems that the officers were inevitably going to see and hear these alligators even if they performed no investigatory stop. See Moody v. State, 842 So.2d 754, 759 (Fla.2003) (explaining that, under inevitable discovery doctrine, evidence may be admitted if an independent source would lead to its discovery). Thus, it is not clear to this court that all of the alligators were seized as the fruit of an illegal detention. On remand, the trial court may need to clarify the scope of suppression if it again decides to suppress evidence.
Reversed and remanded.
ALTENBERND, C.J., and KELLY, J., Concur.
NOTES
[1] We note that the record contains other facts relevant to the trial court's probable cause analysis, but we recite only those facts relevant to our conclusion that the encounter between Bell and the Wildlife officers was at best an investigatory stop and not an arrest.
[2] We reject the State's argument that the trial court was compelled to treat the encounter between Bell and the Wildlife officer as a consensual citizen encounter. The trial court was free to conclude, under all the circumstances, that the officer's verbal command to Bell to stop would have caused a reasonable person to conclude he was not free to leave. See State v. Wilson, 566 So.2d 585, 587 (Fla. 2d DCA 1990).