927 So.2d 975 (2006)
STATE of Florida, Appellant,
v.
Crystal M. SHUTTLEWORTH, Appellee.
No. 2D05-1739.
District Court of Appeal of Florida, Second District.
March 31, 2006.
Rehearing Denied May 17, 2006.
*976 Charles J. Crist, Jr., Attorney General, Tallahassee, and Helene S. Parnes, Assistant Attorney General, Tampa, for Appellant.
Robert E. Heyman of Zimmet, Unice, Salzman & Heyman, P.A., Clearwater, for Appellee.
LaROSE, Judge.
The State appeals the trial court's order granting Crystal Shuttleworth's motion to suppress the cocaine and drug paraphernalia found in her bedroom after a police *977 search. The State argues that Ms. Shuttleworth consented to the search; thus, according to the State, Miranda[1] warnings were unnecessary. Although the trial court's order contains limited factual findings and legal reasoning, the record before us reflects adequate support for the ruling. Accordingly, we affirm.
The confusing fact pattern before us stems from what began as an investigation of a reported domestic dispute. Officer Granville was dispatched to investigate an incident where Ms. Shuttleworth's boyfriend, Don Sullivan, reportedly cut her mother with a knife. Arriving at Ms. Shuttleworth's home, Officer Granville saw a car pull out of the driveway and hit a trash can. He stopped the car; he asked the driver, Mr. Sullivan, and the passenger, Ms. Shuttleworth, to step out. Because the dispatch mentioned the use of a knife, Officer Granville patted down Mr. Sullivan for officer safety purposes. He found two spoons in Mr. Sullivan's front pocket; they were coated with a substance that Officer Granville believed to be cocaine. As a result, Officer Granville handcuffed Mr. Sullivan and placed him in the patrol car.
A second officer, Officer Skipper, arrived on the scene and patted down Ms. Shuttleworth. She had no weapons or other contraband on her. Ms. Shuttleworth, however, was not free to leave; the officers had not determined her involvement, if any, in what one officer called an "ongoing investigation." Officer Skipper knew of the contraband found on Mr. Sullivan but could not recall when, during the investigation, she learned this fact.
With Mr. Sullivan in custody and Ms. Shuttleworth, at a minimum, detained, Officer Skipper entered the house to investigate the reported domestic dispute. Officer Granville remained outside and asked Mr. Sullivan if there were any weapons or drugs in the car. Mr. Sullivan said that if there were, they were not his. Officer Granville then told Ms. Shuttleworth, who was standing at some distance from the patrol car, "Crystal, Donald said if there's anything in the car, it's not his." This comment prompted Ms. Shuttleworth to admit that Mr. Sullivan had given her a bag of cocaine to place under her car seat. Despite this admission, which Officer Skipper later acknowledged was sufficient to arrest Ms. Shuttleworth, Officer Granville did not arrest Ms. Shuttleworth, nor did he advise her of her Miranda rights.
For her part, Officer Skipper returned from the house, concluding that Ms. Shuttleworth's mother had not been cut with a knife and that Mr. Sullivan was not the aggressor. Officer Granville advised Officer Skipper of Ms. Shuttleworth's admission about cocaine. Officer Skipper elicited information from Ms. Shuttleworth that she and her mother had an argument about Mr. Sullivan. Her mother threw a soda can at her and tried to hit Mr. Sullivan. After her mother left the bedroom, Ms. Shuttleworth and Mr. Sullivan locked the bedroom door and left through a window.
In a claimed effort to confirm Ms. Shuttleworth's tale, Officer Skipper asked her to climb in the bedroom window, unlock the bedroom door from the inside, and allow Officer Skipper to look for evidence of the reported domestic dispute. Ms. Shuttleworth did so. Upon entering the bedroom, the officers found cocaine and drug paraphernalia in plain view. They then arrested Ms. Shuttleworth and advised her of her Miranda rights.[2]
*978 The trial court granted Ms. Shuttleworth's motion to suppress, concluding that the officers should have administered Miranda warnings at some earlier time prior to their entry into her bedroom. The trial court also concluded that Ms. Shuttleworth was in police custody when she led the officers to the drugs and paraphernalia in her bedroom. Consequently, the trial court suppressed the contraband discovered in the bedroom.
Miranda warnings are required before a suspect in custody is interrogated. Miranda, 384 U.S. at 467-68, 86 S.Ct. 1602. The trial court properly found that Ms. Shuttleworth was in custody. The degree of custody needed to trigger a Miranda warning rests on the suspect's reasonable belief that her freedom of action was "curtailed to a degree associated with actual arrest." Traylor v. State, 596 So.2d 957, 966 n. 16 (Fla.1992). Four factors are probative of whether a reasonable person in Ms. Shuttleworth's position would consider herself in custody: (1) the manner in which police summon the suspect to question her; (2) the place, purpose, and manner of investigation; (3) the extent to which the suspect is confronted with evidence of her guilt: and (4) whether the suspect is informed that she is free to leave. Ramirez v. State, 739 So.2d 568, 574 (Fla.1999); see also Killian v. State, 761 So.2d 1210, 1214 (Fla. 2d DCA 2000). Our record reflects that at least two of the listed factors support the trial court's conclusion that Ms. Shuttleworth was in custody sufficient to warrant Miranda warnings prior to her reentry into the bedroom.
The trial court also properly found that an officer subjected Ms. Shuttleworth to interrogation. "Interrogation takes place . . . when a person is subjected to express questions, or other words or actions, by a state agent, that a reasonable person would conclude are designed to lead to an incriminating response." Traylor, 596 So.2d at 966 n. 17; see also Rhode Island v. Innis, 446 U.S. 291, 300-01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (concluding interrogation is either express questioning or its functional equivalent).
The record supports the determination that Ms. Shuttleworth, when confronted by Officer Granville's comments about contraband, would think she was going to be arrested and would conclude that his comments were "designed to lead to an incriminating response." As noted earlier, Ms. Shuttleworth admitted to the presence of cocaine in the car, and at least one of the officers conceded that her admission would have been a basis for arrest.
A ruling on a motion to suppress is presumptively correct and will be upheld if supported by the record. State v. Glatzmayer, 789 So.2d 297, 301 (Fla.2001). Our task is to assess "the evidence and reasonable inferences and deductions in a manner most favorable to sustaining the trial court's ruling." See State v. R.M., 696 So.2d 449, 450 (Fla. 4th DCA 1997) (quoting Owen v. State, 560 So.2d 207, 211 (Fla.1990)), receded from on other grounds, 696 So.2d 715 (Fla.1997). Although the trial court's order is short on details, "if there is sufficient evidence ... to sustain the order ... the judge will be presumed to have properly based [her] order on that evidence." State v. Thomas, 332 So.2d 87, 88 (Fla. 1st DCA 1976). These tenets are crucial where, as here, critical factors  such as witness credibility  cannot be gleaned from a cold record. See id.; see also Glatzmayer, 789 So.2d at *979 301. We ordinarily defer to the trial court's factual findings and credibility determinations. See Ault v. State, 866 So.2d 674, 684 (Fla.2003); Lecorn v. State, 832 So.2d 818, 819 (Fla. 5th DCA 2002).
To conclude that Ms. Shuttleworth was entitled to Miranda warnings prior to the officers' entry into her bedroom, the trial judge, based on the evidence before her, could have concluded that the initial domestic violence investigation turned into a drug investigation targeting Mr. Sullivan and Ms. Shuttleworth when Officer Granville found cocaine residue on Mr. Sullivan and Ms. Shuttleworth admitted to the presence of cocaine in the car. While more specificity would have assisted us in our review, see State v. Bell, 873 So.2d 476, 478 (Fla. 2d DCA 2004), we are not left unenlightened as to an apparent basis for the decision below. The evidence before the trial court and the record before us demonstrate that Ms. Shuttleworth was entitled to Miranda warnings before she let the officers search her bedroom. Her alleged "consent" to such a search was made under circumstances reflecting coercion or acquiescence to police authority during her detention. The officers knew of Ms. Shuttleworth's involvement with contraband. Yet, while continuing to detain her during what apparently became a drug investigation, they failed to provide her the constitutional protections of Miranda. The record before us supports the trial court's ruling.
Affirmed.
DAVIS, J., Concurs.
SILBERMAN, J., Concurs in result only.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] Ms. Shuttleworth was later charged with possession of the cocaine found in the car. That contraband was not the subject of her motion to suppress and, we do not address it here.