FULMER, Judge.
Gerald D. Amison, Jr., pleaded no contest to possession of marijuana in excess of twenty grams, reserving the right to appeal the denial of his motion to suppress evidence. We reverse because the trial court erred in concluding that, under the circumstances, no reasonable suspicion of unlawful activity was required for the stop of Amison’s vehicle.
Officer Wolff, with the Florida Fish and Wildlife Conservation Commission, testified that he was on resource patrol in the Richloam Wildlife Management area at 7:30 p.m. on April 29, 2007. It was around dusk. He observed Amison’s vehicle, a pickup truck, near a river, backing away. The officer initiated his blue lights to stop the truck in order to conduct “a resource inspection.” As the officer approached Amison’s vehicle on foot, he smelled marijuana coming from the vehicle. Amison and a passenger were taken out of the vehicle, handcuffed, and searched. They admitted to having smoked “a joint” about an hour before. Officer Wolff searched the vehicle and located a bag of marijuana in the toolbox in the bed of Amison’s truck.
On cross-examination, Officer Wolff indicated that he had not observed Amison participating in any regulated activities, such as hunting or fishing. He did not see any guns or fishing poles. Nor did Officer Wolff have reason to believe that Amison was involved in criminal activity or violating traffic laws. The officer believed he had the authority to detain anyone for a regulatory inspection in the wildlife management area.
The State bore the burden of demonstrating the stop was reasonable. See Hilton v. State, 961 So.2d 284, 296 (Fla.2007) (“When a search or seizure is conducted without a warrant, the government bears the burden of demonstrating that the *799 search or seizure was reasonable”). In arguing that the officer had the authority to stop the vehicle for a resource inspection, the State relied on an administrative code provision, a statutory provision, and a federal district court case from 1970.[1] The first authority cited was Florida Administrative Code Rule 68A-4.006 (2007), “Obligation to Permit Search or Inspection”:
It is hereby made the duty of every person participating in the privileges of taking or possessing wildlife, freshwater fish or parts thereof as authorized by these rules to allow wildlife officers to ascertain whether the requirements of these rules are being followed. No person shall refuse or obstruct such inspection by any authorized officer of the state.
The State next cited section 372.121, Florida Statutes (2007),[2] entitled “Control and management of state game lands,” which provides in part:
(1) The Fish and Wildlife Conservation Commission is authorized to make ... and enforce all reasonable rules and regulations necessary for the protection, control, operation, management, or development of lands ... owned by ... the commission for fish or wildlife management purposes, including but not being limited to the right of ingress and egress.
The State also provided the court with Davis v. Reynolds, 319 F.Supp. 20 (N.D.Fla.1970). In Davis, the plaintiff sought injunctive and declaratory relief “to have Rule 165-8.02(11) promulgated by the Florida Game and Fresh Water Fish Commission declared unconstitutional as viola-tive of his Fourth Amendment right against unreasonable searches and seizures.” [3] 319 F.Supp. at 21. The text of the rule at issue is not recited, but it purportedly gave the wildlife officers authority to stop the plaintiffs vehicle in a game management preserve to check the vehicle for dogs and guns. Id. at 22. A three-judge panel was convened[4] to determine whether the plaintiffs complaint presented a substantial constitutional question and, if so, to make the appropriate determination of law. Id. at 21-22. The panel determined that “this cause is not one presenting a substantial constitutional question” and, therefore, denied injunctive relief and remanded the cause to the single judge for determination and disposition of plaintiffs independent federal claim for damages. Id. at 23-24. In reaching its decision to deny injunctive relief, the panel examined the challenged Florida regulation and stated, in part:
[T]he regulation presently in force does not authorize unreasonable searches and ... is necessary to the enforcement of Florida conservation laws.... [T]he Fourth Amendment standards applicable to this factual situation are lower than those applicable in a prosecutory *800 action. Thus, plaintiffs presence in the game management area diminished his right to privacy when the [S]tate’s need to conserve natural resources is considered.
Id. at 23.
Although the State does not cite to or rely on Davis in its argument on appeal, the trial court did rely on Davis in reaching its decision to deny Amison’s motion to suppress. At the conclusion of the hearing, the trial court correctly stated that there was no reasonable suspicion for the stop of Amison’s vehicle but also stated that “[I] am finding under the [Davis ] decision and under the reasoning of it being a wetlands, that the check for the materials was appropriate.” In the written order denying the motion to suppress, the court stated that the officer “had justification for a resource inspection” based on observing Amison driving from one of the fishing streams on the Management Area. We disagree. Neither the trial court nor this court is bound by the rulings of lower federal courts. See State v. Dwyer, 332 So.2d 333, 335 (Fla.1976); Pignato v. Great W. Bank, 664 So.2d 1011, 1015 (Fla. 4th DCA 1995). Further, we conclude that the operative Florida statutes do not grant the broad authority to wildlife officers that the federal three-judge panel concluded was conferred by the regulation it examined.
Section 372.07, Florida Statutes (2007),[5] governs the police powers of wildlife officers and provides in pertinent part:
(1) The Fish and Wildlife Conservation Commission ... and each wildlife officer are constituted peace officers with the power to make arrests for violations of the laws of this state when committed in the presence of the officer or when committed on lands under the supervision and management of the commission. The general laws applicable to atrests by peace officers of this state shall also be applicable to said director, assistants, and wildlife officers ....
(2) Such officers shall have power and authority to enforce throughout the state all laws relating to game, nongame birds, fish, and fur-bearing animals and all rules and regulations of the Fish and Wildlife Conservation Commission relating to wild animal life, marine life, and freshwater aquatic life, and in connection with said laws, rules, and regulations, in the enforcement thereof and in the performance of their duties thereunder, to:
[[Image here]]
(e) Arrest upon probable cause without warrant any person found in the act of violating any of the provisions of said laws or, in pursuit immediately following such violations, to examine any person, boat, conveyance, vehicle, game bag, game coat, or other receptacle for wild animal life, marine life, or freshwater aquatic life, or any camp, tent, cabin, or roster, in the presence of any person stopping at or belonging to such camp, tent, cabin, or roster, when said officer has reason to believe, and has exhibited her or his authority and stated to the suspected person in charge the officer’s reason for believing, that any of the aforesaid laws have been violated at such camp[.]
(Emphasis added.) The applicable version of section 372.76,[6] entitled “Search and *801 seizure authorized and limited,” gives conservation officers authority to board “any ... vehicle” when they have “reasonable and probable cause”:
The Fish and Wildlife Conservation Commission and its conservation officers shall have authority when they have reasonable and probable cause to believe that the provisions of this chapter have been violated, to board any vessel, boat, or vehicle or to enter any fishhouse or warehouse or other building, exclusive of residence, in which game, hides, fur-bearing animals, fish, or fish nets are kept and to search for and seize any such game, hides, fur-bearing animals, fish, or fish nets had or held therein in violation of law. Provided, however, that no search without warrant shall be made under any of the provisions of this chapter, unless the officer making such search has such information from a reliable source as would lead a prudent and cautious person to believe that some provision of this chapter is being violated.
(Emphasis added.)
The plain language of these statutes limits the power of a wildlife officer to make arrests and board vehicles when the officer has probable cause to believe that laws or regulations are being, violated. We have found no statutory authority for a wildlife officer to stop a citizen for a regulatory inspection without any reasonable suspicion that the person is violating any law or wildlife regulation. Nor have we found any cases that would suggest a different approach. Cases analyzing war-rantless stops and arrests by wildlife officers use the same laws generally applicable to law enforcement officers. See, e.g., State v. Bell, 873 So.2d 476, 477 (Fla. 2d DCA 2004) (citing the Stop and Frisk Law, section 901.161, Florida Statutes (2001)); State v. Howard, 411 So.2d 372, 376 (Fla. 4th DCA 1982) (citing section 901.15, governing lawful arrest without a warrant). To the extent that the State relies on an administrative rule to enlarge the wildlife officer’s authority beyond that granted by statute, we reject such a broad interpretation of the rule. See Willette v. Air Prods., 700 So.2d 397, 401 (Fla. 1st DCA 1997) (“ ‘It is axiomatic that an administrative rule cannot enlarge, modify or contravene the provisions of a statute.’” (quoting State, Dep’t of Bus. Regulation v. Salvation Ltd.., 452 So.2d 65, 66 (Fla. 1st DCA 1984))).
Based on the foregoing authorities, we conclude that the officer needed reasonable suspicion to stop Amison’s vehicle. Because the trial court found no reasonable suspicion existed, a finding supported by the officer’s testimony, the trial court erred in denying the motion to suppress. Thus we reverse the denial of the motion to suppress and remand for the trial court to grant the motion, which will entitle Ami-son to discharge.
Reversed and remanded with directions.
DAVIS and VILLANTI, JJ., Concur.

. The State also cited several cases relating to an officer having probable cause to arrest upon smelling marijuana smoke. We do not consider these cases determinative of the outcome of this appeal.

. Section 372.121 was renumbered as 379.2223. See ch.2008-247, § 29, Laws of Fla. (effective July 1, 2008).

. The plaintiff also sought pecuniary damages for injuries sustained during an altercation with two wildlife officers.

.The case was brought pursuant to 28 U.S.C. § 2281, which provided that an interlocutory or permanent injunction restraining the enforcement, operation or execution of a state statute on grounds of unconstitutionality should not be granted unless the application has been heard and determined by a three-judge district court. This section was repealed by Pub.L. No. 94-381, § 1, 90 Stat. 1119 (1976).

. Section 372.07 was renumbered as 379.3311. See ch.2008-247, § 114, Laws of Fla. (effective July 1, 2008).

. Section 372.76 was renumbered as 379.334. See ch.2008-247, § 119, Laws of Fla. (effective July 1, 2008).